IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALIA AGHA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-102 |
| ) | |
| SUNTRUST BANK, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the Court on a Bill of Costs filed by Defendant SunTrust Bank. Dkt. No. 51. Following an Order of this Court granting summary judgment in its favor, Defendant seeks to recover costs from Plaintiff Alia Agha in the amount of $3,080.85. Because Agha has produced sufficient evidence establishing her inability to pay, the Court declines to exercise its discretion to award Defendant its requested costs.

## I. Background

This matter arose out of Plaintiff's claim that her former employer discriminated against her in violation of the Americans with Disabilities Act Amendments Act ("ADAAA") by wrongfully terminating her and failing to accommodate her needs. Plaintiff was born partially deaf. She has 100% hearing loss in her right ear and 65% hearing loss in her left ear. To communicate with others, she uses a hearing aid and has learned to read lips. Plaintiff was hired by Defendant on December 24, 2012 as a Client Service Specialist I. This position, according to Defendant's official job description, entails duties such as cash handling, processing teller transactions like deposits, and lobby management. As a newly hired employee, Plaintiff had a 90-day probationary period with Defendant, scheduled to end on March 24, 2013.

1

Before completing training, she worked at the "platform," or the lobby of the bank, where she would greet customers and lead them to their safe deposit boxes. After completing her training, Plaintiff was placed on the teller line. As part of her teller duties, and despite her hearing impairment, she was required to answer telephone calls and communicate with customers through the drive-through intercom. Upon making mistakes at the drive-through teller window and being reprimanded by her supervisor Gian Carlo Briceno, she requested a TTY phone or some other method of aiding her to hear customers better. In response, Briceno told her to "tell the customers they have to speak louder, because you have a hearing disability." Agha Dep. 116:5–117:12.

In January and February 2013, Plaintiff had thirteen instances of "differences" in her teller drawer; it was either short or over the amount of money that should have been in her drawer at the end of her shift. The shortages ranged from $0.30 to $59.90. She also had multiple transaction reversals during this period, including ten reversals for one client who needed to make a deposit and receive cash back. Plaintiff also had difficulty counting coins, as she was not familiar with American currency and could not readily tell the difference between dimes and nickels.

Citing her failure to demonstrate "mastery of the teller line and constantly get[ting] stuck between transactions," SunTrust vice president Monique Marchese extended Plaintiff's probationary period an additional thirty days to April 24, 2013. *See* Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s SJ Mot."), Ex. D. She was placed on a Corrective Action Plan ("CAP"), which stated that if Plaintiff's performance did not improve or "if other performance deficiencies arise…further disciplinary actions, up to and including termination can occur at any time." *Id.* The CAP also stated that Plaintiff was "unable to answer phone calls without losing patience

because she does not understand what client's [sic] say to her." *Id.* Plaintiff testified at her deposition that upon being placed on the CAP, she again requested a TTY phone as well as to be placed in a position without teller duties. These requests were not granted.

On March 5, 2013, Briceno displaced $1,995.00 from his cash drawer. According to Defendant, he had previously "sold" cash to Plaintiff via the bank's processing system, and Plaintiff did not acknowledge the sale. Because of this, when Briceno later sold her $1,995, the transaction was not properly processed. As a result, Briceno's drawer was short $1,995 and Plaintiff's drawer balanced. Plaintiff disputes that any of this took place.

Six days later, on March 11, 2013, SunTrust's vice president of security Robert Tapscott interrogated Briceno and then Plaintiff regarding the missing $1,995. He allegedly accused Plaintiff of stealing the money and threatened her with arrest. The next day, Plaintiff gave Marchese a written letter requesting to be removed from the teller line. Marchese apparently threw the letter back at her and told her to bring it to Briceno instead. On March 15, 2013, Marchese terminated Plaintiff, citing her numerous transaction errors, including the missing $1,995.

Based on the above events, in February 2014, Plaintiff filed her First Amended Complaint claiming discrimination and wrongful termination under the ADAAA (Count I), failure to accommodate under the ADAAA (Count II), retaliation under the ADAAA (Count III), and defamation per se (Count IV). Dkt. No. 4. On April 25, 2014, the Court dismissed the defamation claim. Dkt. No. 15. On December 19, 2014, Defendant moved for summary judgment. After hearing oral argument, the Court granted the motion and entered judgment in favor of Defendant.

On February 20, 2015, Defendant filed the instant Bill of Costs to recover the expenses it incurred in defending this case. Dkt. No. 51. Plaintiff filed her opposition, which stated that she should not be taxed costs because she is "a student with limited income," among other reasons. Dkt. No. 53. On March 9, 2015, the Court ordered Plaintiff to submit documentation, such as a financial affidavit, by which the Court may determine whether she has the ability to pay the Bill of Costs. Dkt. No. 54. On March 30, 2015, Plaintiff submitted a financial affidavit explaining her inability to pay over $3,000 in costs. Accordingly, the Court finds that the Bill of Costs is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 54(d) permits a prevailing party to recover costs where authorized by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444–45 (1987). Although the Rule creates a presumption that the prevailing party will be awarded costs, courts have "considerable discretion" in deciding whether and to what extent to award costs. *Constantino v. Am. S/T Achilles*, 580 F.2d 121, 123 (4th Cir. 1978); *accord Fells v. Va. Dep't of Transp.*, 605 F. Supp. 2d 740, 742 (E.D. Va. 2009). "To overcome the presumption, a district court 'must justify its decision [to deny costs] by articulating some good reason for doing so.'" *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999) (citing *Teague v. Bakker*, 35 F.3d 978, 995–96 (4th Cir. 1994) (internal quotation marks omitted)). The Fourth Circuit has identified a few factors that justify a court exercising its discretion to deny an award of costs: (1) "misconduct by the prevailing party worthy of a penalty"; (2) "the losing party's inability to pay"; (3) the costs' "excessiveness"; (4) "the limited value of the prevailing party's victory"; and (5) "the closeness and difficulty of the issues decided." *Id.* Of these, only the second factor is relevant in the analysis here.

## III. Analysis

In response to the Court's Order dated March 9, 2015, Plaintiff submitted an affidavit detailing the following: (1) she is a full time student at a community college; (2) she is not presently working; (3) her bank account, which was closed recently due to "prolonged overdrawn status," shows a negative balance; (4) her live-in partner pays for her lodging; and (5) she receives a $500 stipend from her family in Pakistan that she uses to pay for her school and food expenses. Dkt. No. 55. It is apparent that, unlike the losing party in *Cherry*, Plaintiff does not have significant marital property or income at her disposal, nor does she receive any income from a 401(k) or other benefit plan. 186 F.3d at 447. The Court thus finds that Plaintiff is of sufficiently modest means to warrant denying Defendant an award of costs based on Plaintiff's inability to pay them. *See id.* at 446.

## IV. Conclusion

For the foregoing reasons, the Court declines to exercise its discretion to award Defendant its requested costs.

An appropriate Order shall issue.

April __, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge